Our second case for this morning is Mooney v. Illinois Education Association, and I'm going to take the liberty of inviting counsel, to the extent they can, between this case and the third case, Janus v. American Federation of State, etc., Workers. There's a lot of overlap between these two cases, although not 100 percent, so I kept them separate on the docket, but you might just want to, both sides might want to take heed of that as you present your arguments. But Mr. Mitchell, I invite you to come. Property that has been taken in violation of another's constitutional rights must be So does that mean all property, or does that mean money? It means all property, whether tangible or personal property, or money, and the cases are consistent on this point. So are there no statutes of limitations that apply? Of course there could be other defenses, Judge Wood. Our claim is that a defendant's good faith will not shield it from a restitutionary remedy. Let's talk about a couple of things. Let's talk about when the Supreme Court in today's world recognizes a claim to obtain money from somebody as equitable versus such a claim being a claim for damages. The court, starting with the Walmart case, there are all kinds of cases I can think of, McFadden case, where the court has been careful not to overextend the realm of equity into functionally claims for dollars. That's right. The way the court's drawn the distinction in recent cases, like Montanile, is to ask whether the plaintiff is seeking to impose an equitable lien on a specific account. Right. And you don't have a specific account here. You just say you can go against the union's general treasury. The general treasury is a specific account. That's where the union puts its money. It's not like the lawyer's trust fund, or it's not like a segregated account, say an ERISA that a company might run for the 401Ks. You can call it a separate account in that it's theirs, not mine, but is that what the court means by separate account, in your view? There has to be a specific account that you're seeking to impose an equitable lien on. How do you know any of your client's money is in that account? That's where the money goes when the union takes it. But it's already been spent. The specific dollars may very well have been spent, but that does not deprive our clients of a remedy. Why? In the United States against Windsor, the taxes were paid into the U.S. Treasury, and they still had to be repaid to Ms. Windsor, even though the taxes had been collected in good faith reliance on a statute that had not yet been declared unconstitutional. So the case is no different from any of the other myriad cases where criminal fines have been collected. Now, all of your cases involve governmental entities holding the money, but of course the government isn't your defendant. Correct. You're suing a private party, the union, for money because the state of Illinois took that money out of your client's check. That's right. The state of Illinois authorized the union to take the money from our client's check. No, well, the state of Illinois took the money out, and then they gave it to the union. The public employer and the union both participated in this. It was done pursuant to a partnership. It was done pursuant to an agreement, exactly. But I'm saying that the actual party who took the money out was the state of Illinois, and then they gave it to the union. I don't agree with that characterization, Your Honor, with respect. The school district, it's not the state of Illinois, but the school district entered into a collective bargaining agreement with the union. But the public entity is the one that gives the check to the recipient. The public entity pays the check. The public entity- for health insurance, and in this instance, money that it's no longer taking, of course, thanks to the Janus ruling. But it took the money out. But you're going after somebody who received the money. But the union agreed with the school district to have an agency shop arrangement in the collective bargaining agreement. It's the collective bargaining agreement that established the agency shop. Oh, no, I understand. Judge Rovner, did you have a question? Yes, I do. Thank you. Suppose during the course of her employment, she had been passed over for a promotion in violation of seniority rules, and the union had spent $50,000 in lawyer time representing her in her claim against the employer. Would Ms. Mooney then concede that she didn't need to be paid restitution because her fair share dues had been used for her legal representation? Under Your Honor's hypothetical, she would not concede that, no. Because under Janus- So if she's not willing to concede that, then isn't she conceding that she's not really for what she thinks is the constitutional violation? No, not at all. She's asking for repayment of the money that the union diverted from her paycheck. But you know, in restitution, though, you have to tender back what you got, too. Right. And I think that's where Judge Rovner's hypothetical is taking us. Exactly. Understood. So if she- Yeah. So surely, at a minimum, you would need a hearing to find out over the years, did she get any pay raises that the union negotiated? Was she represented ever in a grievance? Some catalog of what benefits that she got, which she would then have to tender back to the union before the union would have to tender to her what was left over from the agency fees it unlawfully, in your view, collected. Judge Wood, with respect, I don't think Janus would allow a court to make that type of inquiry after- What in Janus do you see that says that? Janus specifically allows public employees to withhold financial support from the union even if they receive benefits from the union. Absolutely. But you are asking, Janus doesn't address your issue as the Supreme Court, to my regret from time to time, did. They say, you know, we're sending this back to the lower courts to take it from here. And it really actually writes quite a bit in the future tense. Justice Alito's opinion says state and public sector units may no longer extract agency fees. This procedure cannot continue. The case is remanded for further proceedings consistent with this opinion. We've never claimed that Janus resolves the question of retroactivity or whether- It doesn't resolve it your way or against you. We agree. It does not- It leaves it open. It does not weigh in. Yes. And I'm saying if you are using, as I believe Judge Rovner was trying to explore, if you have a pure equitable claim for restitution, you are unwinding what happened in the past. That's right. But- And so there are benefits, whether she wanted them or not, that she received from the union's efforts, whether it's the hypothetical, and obviously this may not apply at all to Miss Mooney, you know, but hypothetical processing of a grievance or hours provisions or pay raises or something. And unless she didn't want the pay raises, now Mr. Janus didn't want the pay raises. Mr. Janus said the state of Illinois is bankrupt and, you know, don't give me the money. Fine. So he can give the pay raises back to the union before he gets anything that the union might give him. No, it's quite possible our client received some type of benefit from collective bargaining. It's quite possible the proposed class members received some type of benefit from the union. But Judge Wood, the way I would answer your Honor's question is, let's suppose the union ignored Janus and kept taking Miss Mooney's money after the Supreme Court's decision. If Miss Mooney sued the union to recover that post-Janus money, the union could not possibly claim that it could deduct from that money whatever benefits it thought it conferred. No, no, of course not, but it would be a damages action. That's correct. But Janus would commit a total refund of the money, 100%. It would be a damages action. You took my money. There's a tort, you know, replevin or some such thing. So, of course, you know, that's not what they did. They stopped immediately. Of course they stopped immediately. But if they hadn't, Miss Mooney would be entitled to 100% of what the union took. There would be no offset for potential benefits that the union might have conferred. But you wouldn't be in equity at that point. No, I believe we would be in equity because she'd be seeking recovery of the money, the property that was taken in violation of her constitutional rights. There would not be an offset because Janus would not permit it. I don't know. I really don't know that you're right about that. The constitutional holding of Janus has to trump any possible equitable offset that a court of equity might, because Janus is a constitutional holding of the Supreme Court and that trumps common law principles of equity. It's a holding that the First Amendment rights of people who do not wish to contribute in any way to the union are more important and take precedence over anything else that's going on. They take precedence over whatever the union is doing. They take precedence over whatever the employer is doing. People do not have to subsidize organizations with whom they disagree. That's what Janus holds. Right. And that even trumps equitable set-off that might be imposed. That I'm not sure. I don't see that anywhere in the opinion. But Your Honor, I think Your Honor agreed with my suggestion that if the union were to take money from Ms. Mooney's paycheck post-Janus, they would have to return all of it. But I'm saying it's a damages action. It's a damages action because the money goes into the union's general treasury. But Ms. Mooney would be seeking to recover that money that was taken, and she would be seeking to impose an equitable lien. But more importantly, we don't need to show that the recovery we're seeking is equitable to prevail in this litigation. That is only one of many reasons. Help me. I'm sorry. Please. Help me with this, please. You're saying that she's seeking money because the defendants violated her First Amendment rights under the Constitution, right? Yes. I mean, that's what you're saying. That's why she wants her money returned. I'm trying to figure out how this is different than a suit against the union for requiring her to wear to work a button supporting a particular political candidate for which she would have a damages claim. Because in that hypothetical, the union hasn't taken her money or property. The union has simply injured her. And if the union forced her to do that in good faith, in reliance on a statute or some Supreme Court ruling that had not yet been repudiated, the union might very well have a good faith defense to an action for money damages. Because that's consistent with the holdings of other courts of appeals that have allowed private parties in Section 1983 litigation to assert good faith as a defense to an action for damages. The difference here is the union took property that belongs to her. And good faith is never a defense to a restitutionary remedy. Whether we call the restitution legal or equitable, it doesn't matter. If a defendant takes property in violation of another person's constitutional rights, good faith will never allow them to keep that property when the plaintiff sues for its return. No, you're just talking about money, right? Money or property, either one. But property is different. If you look at the entire line of cases in equitable restitution, if you take my favorite Monet painting, I have to give it, you know, it needs to go back to the right place. But money poses unique problems in this instance because a dollar is a dollar. You know, it gets spent. It's not there anymore. It's not in an identifiable account. The general treasury isn't an identifiable account. But that's never been held to be a defense in any of the contexts that have required repayment of money in the situations we've cited in every such as Windsor. But your situations are all money back to the government. Not quite all of them. The Vennari case that we cite deals with victim's restitution, and that was paid to a private party under a statute that was declared unconstitutional nine years later. And the private entity that received the victim's restitution had to pay it back. So not all the cases involve government dependence. Most of them do, but not all. I'm sorry. Does it matter to your argument that all of the appellate court rulings that may have questioned the good faith defense predate Wyatt? Does that matter? I don't think it does, Your Honor, because in each of those cases, the appellate courts recognized a good faith defense. But none of those cases ever allowed the defendant to keep the property that it had taken. So Wyatt against Cole is a good example for us, where the defendant had an immunity from a claim for money damages, but the Wyatt opinion never goes so far as to hold that the defendant could have kept the cattle and the tractor that it had seized in reliance. Well, suppose the cattle had died, or suppose the painting burned up in a warehouse fire, and now you're bringing your restitution case. What happens then? They have to pay the fair market value consistent with the tort of conversion. The same thing would happen in a common law claim. And I say I'm willing to my rebuttal time. I'll make sure you can have your rebuttal time. So to be continued. OK. OK. Thank you, Your Honor. Certainly. Mr. West. Thank you, Your Honor. Good morning. Consistent with the court's observation that the overlap between the two cases, what I'd like to do with the Court's permission is start with a few more general comments about the good faith defense generally, and then turn to Mr. Mitchell's specific equitable arguments. Okay. The real issue here is whether private parties can be held liable under 42 U.S.C. § 1983 for actions that they took in reliance on a state statute that specifically authorized the action, and a statute that was indisputably constitutional at the time of the actions that they took. So of course, Mr. Mitchell's point is even with all of that, if in hindsight it turns out you shouldn't have gotten the money, you have to disgorge it. Well, so to the extent that we're talking about an equitable argument there, I mean, I think in the first place, the claim here is a damages claim. It's not an equitable claim. It's a claim for violation of her First Amendment rights. She's seeking redress for a violation of her First Amendment rights. So your position is the money wasn't taken in a vacuum. The money was taken because the union thought it could take agency fees. The Supreme Court has told us that that's impermissible for somebody who does not adhere to the union's views, and that's a first—I mean, Justice Alito's opinion is very clear. That's a First Amendment violation. Sure. That's a First Amendment violation, but the money was not taken in a vacuum. The money was taken as part of a scheme that had been authorized by the state of Illinois since, I believe, 1984. Right after Abood. Well, actually, six or seven years after Abood. Several years after Abood, both the two statutes that issued this morning were enacted shortly after Abood, both of them setting up a system, what I'd call a system of exchange in a way, but a system for funding of collective bargaining by public employee representatives. And the system was such that even if you chose not to join the union, you were required to contribute your fair share of the union's costs of collective bargaining, and in exchange, you got union representation, both at the bargaining table and bargaining general terms and conditions. Right. Until the Supreme Court threw it away, that was the theory. And the Supreme Court said that you can't do that anymore—admitted. But if we're looking at this from the point of view of an equitable remedy, which is Mr. Smith looking at it, the fact that the Supreme Court has now said you can't do that anymore doesn't change the fact that this was a system that was authorized by law at the time the events took place. And even more important, it does not change the fact that the plaintiff, like all the other members of the bargaining unit, whether they were union members or not, received the benefit of union representation. And the suggestion that that's somehow trumped by the fact that Janus said this is no longer constitutional, I'd refer the Court particularly to the Lemon v. Kurtzman, which we cited in our briefs. So, I was going to ask you if you could talk a little bit about retroactivity, because that theme weaves through the arguments in these two cases. And I'd like you to tell me what your theory is, whether the Janus opinion addresses, in some way changes, the fact that what you were doing at the time was authorized by law. I would say two things on retroactivity. First of all, as I think Your Honor indicated in a question earlier, there is, at the minimum, a significant doubt as to whether the Janus ruling was, in fact, applied to the parties before it, as opposed to simply stating a new rule of law and remanding to the lower courts for them to then deal with the consequences. Having said that, however, our real argument here is, even if Janus is deemed to have been retroactive, that doesn't change the fact that, as Justice Stevens, I believe it was, Justice Souter, I believe, pointed out in the James Beam case, and as the Court also mentioned in the Reynolds-Wilkasketh case, finding that there's retroactive application for a judicial holding is only the first step in the process, and that there's, even after you determine that the new rule applies backwards, so to speak, you still have an issue of remedy. And that's what the Court said, is that there will be cases, not all cases, but some cases in which there is an issue of what is the appropriate remedy, even where we have determined that the statute, that the new rule of law is retroactive. Well, speaking of retroactivity and good faith, would there be a point when this litigation started and now it's being challenged, but it took some time to get to Abood and Janus, would it be, I don't want to call it a compromise, but something that maybe there should have been an escrow account set up when this challenge was obviously at hand, and rather than keep collecting and paying it out, to at least put it aside in case something happened where they're going to have to pay it back. Well, I appreciate the question, Judge Mannion, but I would say no for several reasons. First of all, because at the time, up until the Janus ruling came down, Abood was the according to Abood. The second thing I would say is that simply saying, well, you could put it in escrow, I mean, that has serious consequences, but because the union, like any non-profit organization, has a budget, it has money that comes in and money that is spent for representation. If the union were to say, well, all of this money that's come from fair share fee payers, we are going to put it in an escrow account where we can't touch it. That means one of two things. Either the union has to charge its members more for its services, raise dues, or it has to reduce its services. Well, that would be the alternative, and say, okay, money's in escrow, but non-union people, if they got a grievance, they're not going to be paid any attention to. But they're not allowed to do that as a matter of law, as a matter of law, they're required to represent them anyway. I'm talking about an escrow, that's all. Yeah. But I'm just saying, they wouldn't have the option to say, we're just not going to represent you because of the duty of fair representation. Exactly right, Judge Wood. So the governor's suggestion that the union should have put it in escrow back when he first filed his lawsuit, that's simply ... Another way of putting that is that the union should have ordered its affairs in reliance on the non-binding dicta in Harris and Knox and some of the other Supreme Court opinions, rather than following the rule of Abood, which at the time was controlling law. And I think that really brings us to the fundamental question here, which is whether private citizens are entitled to rely on the law as it exists, or whether they are required to try and speculate on what the Supreme Court is likely to say next. And the Supreme Court has very clearly said, in its directions to the lower courts, that the lower courts, if there is a Supreme Court decision that's on point, but that there are more recent decisions that have cast some doubt on it, that the lower courts should follow the directly on-point decision and leave it to the Supreme Court, if it chooses to do so, the prerogative to overrule its own decisions. And for the life of me ... Oh, the court is ... Right. In other words, a defendant ... I mean, a defendant can assert a reliance interest on the old law when defending a particular ... against a particular remedy. Yeah, certainly, and the ... I can't see any reason why private parties who are defendants in a liberal civil lawsuit should be expected to place more reliance, or less reliance on settled, binding Supreme Court precedent than the lower courts are ... Well, it would put private parties, as the court has observed, it would drive a wedge between the position of the school district, or the state, or whoever the entity is. We've got the state in one of these cases, and the school district in the other. Like Ms. Mone can't sue the school district, because qualified immunity would clearly protect the school district. Sure. And so what she's done is she's looked at the ... for the other party to the collective bargaining agreement. And the court drew a distinction, which is being challenged here, as whether it's meaningful or not, between an immunity and a defense, seemed open to giving a defense, hasn't definitively ruled, of course, but seemed open to giving a defense, but not immunity. Yes. And Judge Wood, let me just go back to what I think is the real starting point for looking at this notion of the good faith defense, and that is the court's decision in Lugar versus Edmondson-Oil, because that's the case where the court held that non-governmental defendants can be sued, can be liable under Section 1983 in the first place. And in reaching that ruling, it was a close decision, it was five to four, but the majority recognized the problem that the dissent pointed out with that, and it called it a problem. It used the word problem, namely that if private defendants who made use of seemingly valid laws could be subject to liability if the law is subsequently held to be unconstitutional. And that's exactly the situation we have here. And the court suggested, and this is footnote 23 in the Lugar case, not only identified this problem, recognized that it was a problem, but suggested how the problem should be dealt with by establishing an affirmative defense, similar to what we had for government officials with qualified immunity. Now this is, of course, dicta. And then we get to Wyatt versus Cole, where the question really is, should the problem be solved by extending qualified immunity to private party defendants? And the court said no, but for a very specific reason. It looked at the history of immunities and defenses at the common law, and at least five judges of the court, those who joined the two separate opinions, specifically found that at the common law there was a basis for a good faith defense for private defendants in reliance on a presumptively valid statute. And the other four justices assumed that position for the sake of argument. So the entire court either found or assumed that there was such a private party defense at common law. But the reason- No distinction. How much of your argument depends on characterizing this as a suit for damages as opposed to restitution? I think we win either way, Your Honor. I think it clearly is a suit for damages. But if it's a suit for restitution, you know, I- and I don't think it is for any number of reasons. But just indulge me, you know, if it were. But the result would be the same in equity. And I think the Lemon case, which I mentioned earlier, is directly on point. The Eighth Circuit's case and the Prison Fellowship Ministries, both of these were cases in which a state statute authorized providing funding to a religious organization. And in both cases, the statutes were struck down by the courts as unconstitutional on establishment clause grounds. And the courts nonetheless held that the organizations, the religious organizations that had received the money were not required to pay it back. In fact, in the Lemon case, the Supreme Court went even further than that and said money that hadn't yet been paid, the state could go ahead and still pay out this money to the So, you know, I think these cases stand for the proposition that there are really two reasons why, if we're in equitable restitution, we still win. One is the benefit theory that we talked about a little earlier. And the other one is the reliance on existing law, which you see in both of these cases. All right. Thank you very much. Thank you, Your Honor. So, Mr. Mitchell, you're going to have to be concise, but that'll be all right. We have no quarrel with Mr. West's claim that a good faith defense should exist. We have no quarrel with his claim that a good faith defense could protect his client from an action for money damages. If we tried to sue to recover for emotional distress, for example, the holdings of the other courts of appeals on the good faith defense would, if this court were to follow them, protect the union from that type of liability. But Mr. West hasn't answered the claim we're making today, which is that even with a good faith defense, a defendant never can use good faith as an excuse to keep property or money that it took in good faith, but in violation of another's constitutional rights. In no area of law is this allowed, not in common law, not in criminal law, where fines that are paid under an unconstitutional statute have to be repaid, not in tax law. In the United States against Windsor, the IRS had to refund the money that it collected, even though the IRS agents would have qualified immunity in action for money damages if Ms. Windsor were to sue for emotional distress or other collateral harms. Took at what point? When you say taken, at what point does that start to be a problem? Well, within the statute of limitations, of course. We're not saying that we can go back 40 years to recover this money. The statute of limitations will protect the union from any money that it took beyond. Why is there a statute of limitations that applies to an equitable claim? Under Section 1983, the statute of limitations would apply to any type of monetary recovery. That's my understanding of this. Of course, there's no written statute of limitations. It's borrowed from state law. But I've never heard of the notion that equitable restitution can go back 40 years. It's two years in Illinois. I believe that's right. All right. Well, thank you very much. Thank you, Your Honors. We will continue on this same theme, theme and variations, if you like music.